IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge William J. Martínez**

Civil Case No. 10-cv-03087-WJM-BNB

SALLY LUKE,

     Plaintiff,

v.

HOSPITAL SHARED SERVICES,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff Sally Luke brings this action against Defendant Hospital Shared Services alleging that her termination from employment with Defendant was motivated by her race, national origin, and gender and in retaliation for engaging in protected activity, all in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII") and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401 *et seq.* ("CADA").[1] (Compl. (ECF No. 1) pp. 5-6.)

Before the Court is Defendant's Motion for Summary Judgment on all claims ("Motion"). (ECF No. 47.) For the reasons set forth below, the Motion is granted.

## I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material

---

[1] Plaintiff also originally brought a claim for age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. and a state law estoppel claim. (Compl. pp. 5-6.) However, in her opposition to Defendant's Motion for Summary Judgment, Plaintiff "confesses the dismissal of her estoppel claim under state law, as well as her age discrimination claims under both state and federal law." (ECF No. 58 p. 1 n.1.) Therefore, the Court will direct the Clerk to enter judgment in favor of Defendants on these claims.

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

## II.  FACTUAL BACKGROUND

Defendant Hospital Shared Services provides security services for the City and County of Denver at Denver International Airport ("DIA").  (ECF No. 47-22.)  John Costigan is Director of Security at DIA.  (Costigan Dep. (ECF No. 47-3) p. 3.)

Plaintiff Sally Luke is a Native-American, Hispanic-American female.  (ECF No. 59-4.)  She was employed by Defendant Hospital Shared Services as a security guard at DIA from November 28, 2005 until May 4, 2010.  (ECF Nos. 47-8; 47-17.)  As a

2

security guard, Plaintiff was required to act in a professional manner and to avoid "excessive conversations with client employees and co-workers." (ECF No. 47-7.) The rules of conduct promulgated by Defendant also prohibited Plaintiff from false reporting and refusing to obey or follow instructions. (*Id*.)

In January 2010, the wife of Ed Roy, one of Plaintiff's co-workers, had a brain aneurysm and was hospitalized. (Pl.'s Dep. (ECF No. 47-1 & 47-2) p. 149.) A fund was created to accept donations for Roy's family and various fundraisers were planned. (*Id*. at 150.) Plaintiff helped plan a fundraiser that involved selling tamales to the employees at DIA. (*Id*. at 150-52.) The tamale sale was to take place on April 19, 2010. (ECF No. 59-12.) Brochures for the tamale sale were placed in management offices as well as the employee break rooms. (Pl.'s Decl. (ECF No. 59-2) ¶ 5.) The tamale sale was approved by management, who informed Plaintiff that she had to sell the tamales on her day off and could not sell tamales directly in the terminal but had to operate out of Defendant's trailer. (Pl.'s Dep. at 150.)

On April 2, 2010, Plaintiff was walking around the DIA terminals distributing fliers for the tamale sale. Defendant's policies prohibit security guards from stopping by the posts of other security guards. (Costigan Decl. (ECF No. 59-13) ¶ 3.) Plaintiff was observed by Alisha Lopez, a contract manager for the City and County of Denver, stopping by the post of Alfred Kakyire and speaking with him for approximately three minutes. (ECF No. 59-18.) Plaintiff then stopped by the post of Michael Hohnemann and spoke with him for three minutes. (*Id*.) Plaintiff was also observed speaking with another female guard. (*Id*.)

After observing these interactions, Lopez warned Plaintiff that she should not engage in excessive congregating.  (ECF No. 59-18.)  Lopez also reminded Plaintiff that she was not supposed to drink coffee in public view.  (*Id*.)  Lopez later reported Plaintiff's actions to Costigan.  (Costigan Dep. at 12-13.)  Costigan asked Robbie Near, a human resources employee, to look into this issue.  (*Id*.)

On April 8, 2010, Near had a meeting with Plaintiff during which Plaintiff was warned that she was not permitted to solicit for the tamale fundraiser during work hours.  (ECF No. 47-14.)  Plaintiff denied soliciting employees while she was working.  (*Id*.)  On April 22, 2010, Near had a second meeting with Plaintiff during which she asked Plaintiff to prepare an internal report regarding the tamale sales and who she sold tamales to.  ((Near Dep. (ECF No. 47-13) p. 11.)  Plaintiff's Internal Report, dated April 23, 2010, stated:

> Accusations of soliciting tamales at TSA security
> checkpoints and on concourses.
>      Response: Untrue—Prove It
> There are 100's of cameras through-out DIA, pull the tapes.
> If the city security office is complaining why did they show up
> at the trailer shed where management sent us to sell the
> tamales, also why did Mark Inzana e-mail our flier to all the
> city employees at DIA?  Once again
>      Prove It!
>      *This is beyond Harassment!

(ECF No. 59-22.)

On April 30, 2010, Costigan and Ron Mack, Defendant's Director of Human Resources, had a meeting with Plaintiff.  (ECF No. 47-16.)  They discussed the tamale sale and Plaintiff denied having solicited any employee while at work.  (*Id*.)  Plaintiff insisted that she had permission for the tamale sale but admitted that she was required

to sell the tamales on her time off of work.  (*Id.*)  Costigan informed Plaintiff that he had reviewed tape recordings of her meetings with Robbi Near and that he found her tone to be "argumentative, provocative, and insubordinate."  (*Id.*)  Plaintiff demanded to know who made a complaint about her solicitation and stated that she was an American citizen who had the right to know the name of her accuser.  (*Id.*)  Costigan informed her that the meeting was only an administrative disciplinary meeting and not a court of law. (*Id.*)  Costigan also informed Plaintiff that this was the second incident in the last few months in which Plaintiff refused to accept accountability for her actions.  (*Id.*)  At the end of the meeting, Costigan told Plaintiff that he was taking the matter under advisement and would inform Plaintiff when he had made a decision about her employment.  (*Id.*)

On May 4, 2010, Plaintiff gave Frank Campbell, her supervisor, an "Internal Report" which stated that she felt management was singling her out based on her race and gender (the "Discrimination Report").  (ECF No. 59-19.)  Frank Campbell made a copy of Plaintiff's Discrimination Report and gave the copy to Terry Sosnowski, Plaintiff's partner.  (Sosnowski Decl. (ECF No. 59-3) ¶ 7.)  Campbell then put the Discrimination Report in an envelope and slid it under the door of the Human Resources Department.  (Campbell Dep. (ECF No. 47-20) p. 5.)  Campbell did not read the Discrimination Report.  (*Id.*)

Approximately thirty minutes later, Campbell informed Plaintiff that Costigan wanted to meet with her.  (Pl.'s Dep. at 175-76.)  Plaintiff was handed a Disciplinary Action form which stated that she was observed "congregating and drinking coffee in

public view" and that she was being terminated for "insubordination, not taking responsibility for [her] actions and falsifying information."  (ECF No. 59-9.)  Costigan informed Plaintiff that security officers were required to be forthright and honest and that he did not believe Plaintiff met those qualifications.  (Pl.'s Dep. at 177.)  Costigan told Plaintiff that she had falsified her Internal Report regarding the tamale sale; Plaintiff denied any such falsity.  (*Id*.)  Plaintiff told Costigan that he could "do whatever [he] wanted" and refused to sign the Disciplinary Action.  (*Id*. at 177, 179.)  During this meeting, Plaintiff did not mention the Discrimination Report she had given to Campbell earlier that day.  (Pl.'s Dep. at 183.)

Robbi Near received Plaintiff's Discrimination Report when she arrived at work on May 5, 2010.  (Near Dep. at 16.)  After Near read the Discrimination Report, she gave a copy to Costigan and Ron Mack.  (*Id*. at 27-28.)

On these facts, Plaintiff brings this action alleging discriminatory and retaliatory discharge.

## III.  ANALYSIS

The claims remaining in this case are: (1) race, national origin, and gender discrimination in violation of Title VII and CADA; and (2) retaliation in violation of Title VII and CADA.  The familiar *McDonnell-Douglas* burden-shifting test applies to each of Plaintiff's Title VII and CADA claims. *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002).  Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of employment discrimination or retaliation.  *Id*.  If Plaintiff makes out a *prima facie* case, the burden shifts to Defendant to come forward with a legitimate, non-

discriminatory basis for its employment decision.  *Id*.  If Defendant does so, the

inference of discrimination drops out and the burden shifts back to Plaintiff and she

must offer evidence to show her race, national origin or gender was a determinative

factor in the employment decision or that Defendant's non-discriminatory reason was

merely pretext.  *Id.*

## A.   Race, National Origin, and Gender Discrimination

To establish a *prima facie* case for discrimination, Plaintiff must show: (1) she is

a member of a protected class; (2) she suffered an adverse employment action; (3) she

was qualified for her position; and (4) the challenged action took place under

circumstances giving rise to an inference of discrimination.  *EEOC v. PVNF, LLC*, 487

F.3d 790, 800 (10th Cir. 2007) (race); *Mattera v. Gambro, Inc.*, 94 F. App'x 725, 728

(10th Cir. 2004) (national origin); *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1142 (10th

Cir. 2009) (gender).  Defendant alleges that Plaintiff cannot satisfy either the third or the

fourth prongs of this *prima facie* standard.

The third prong of the *prima facie* standard requires that a plaintiff make a

preliminary showing that she was qualified for her position.  *Thomas v. Denny's Inc.*,

111 F.3d 1506, 1510 (10th Cir. 1997).  Defendant argues that Plaintiff was not qualified

for her position because she engaged in misconduct when she solicited other officers

while on duty.  (Mot. at 18.)  However, Plaintiff's alleged solicitation of her co-workers is

one of the reasons that Defendant claims Plaintiff was terminated.  The Court may not

consider Defendant's subjective reasons for terminating Plaintiff when evaluating

whether she has established a *prima facie* case.  *Thomas*, 111 F.3d at 1510 ("relying

on a defendant's reasons for the adverse action as a basis for ruling against a plaintiff at the prima facie stage raises serious problems under the *McDonnell Douglas* framework because it frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual."); *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992) ("the employer's reasons for the adverse action are not appropriately brought as a challenge to the sufficiency fo the plaintiff's *prima facie* case.").  Therefore, the fact that Defendant believed there was cause to terminate Plaintiff based on her misconduct is not relevant to whether she was qualified for her position.

A plaintiff may satisfy her burden with respect to the third element of the *prima facie* case by showing her work was satisfactory or that she had held her position for a significant period of time.  *Kenworthy*, 979 F.2d at 1470.  In this case, Plaintiff has submitted her performance appraisals from 2006-2010 which show that her work performance generally met or exceeded her supervisors' expectations.  (ECF No. 59-8.) Additionally, these appraisals show that Plaintiff held her position for more than four years.  (*Id*.)  This evidence is sufficient to meet Plaintiff's *prima facie* burden with respect to whether she was qualified for her position and the Court finds that Plaintiff has satisfied the third element of the *prima facie* standard.

The fourth prong of the *prima facie* standard requires that a plaintiff show that the adverse action she suffered took place under circumstances that give rise to an inference of discrimination.  Defendant alleges that Plaintiff has failed to meet her burden because she has failed to show that she was treated differently than any similarly situated employee that does not belong to her protected class.  (Mot. at 18-19.)

8

In her opposition, Plaintiff completely fails to respond to this argument.  Plaintiff's failure to respond and point to the specific evidence in the record which shows an inference of discrimination is a sufficient basis, in and of itself, to grant summary judgment on these claims.  *Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) ("[O]n a motion for summary judgment, it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without depending on the trial court to conduct its own search of the record."); *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007) (plaintiff has the burden of producing evidence that employees are similarly situated).

Despite the fact that it was not required to do so, the Court has reviewed the record and can find only one piece of evidence that attempts to compare Plaintiff's discharge to the manner in which other employees were treated.  In her Declaration, Plaintiff states:

> There were many white supervisors and managers who worked on the fundraiser while they were on their breaks. Alfred Kakyire was not disciplined at all.  He is not American Indian or Hispanic and he never complained about discrimination.  Same with John Costigan.  Yet, no one besides me was disciplined let alone fired.

(Pl.'s Decl. ¶ 9.)  To the extent that this statement is an attempt to show that Costigan and Kakyire were similarly situated to her and treated more favorably, such attempt fails.  "A similarly situated employee is one who deals with the same supervisor and is subject to the same standards governing performance evaluation and discipline." *Green v. New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005).  Plaintiff was a security guard while Costigan was Defendant's Director of Security and one of Plaintiff's

supervisors (or her supervisors' supervisor).  Therefore, Plaintiff and Costigan neither had the same supervisor nor were subject to the same standards or policies governing their employment.

Plaintiff and Kekyire were both security guards.  However, there is no evidence that Kekyire and Plaintiff had the same supervisor.  It is Plaintiff's burden to show that her comparators are similarly situated.  *Riggs*, 497 F.3d at 1121 n.4.  Additionally, Plaintiff has failed to produce evidence showing that Kekyire engaged in conduct similar to Plaintiff.   "[E]mployees who are similarly situated must have been disciplined for conduct of comparable seriousness in order for their disparate treatment to be relevant."  *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).  The only incident in the record regarding Kekyire is that Plaintiff approached him while he was on post in one of the terminals and asked him to hang a flier in the break room.  Kekyire did not affirmatively approach any employee and only spoke with Plaintiff for approximately three minutes.  On the other hand, Plaintiff was observed approaching and speaking with at least three co-workers, each for a few minutes.  (ECF No. 47-5.)

Moreover, Plaintiff was disciplined, not only for the incident in which she stopped and spoke with three different co-workers about the fundraiser, but also for how she responded to management during meetings and in her written reports.  (*See* ECF No. 47-15; 47-16.)  There is no evidence that Kekyire had any similar encounters with his supervisors.  When asked to document his conversation with Plaintiff, Kekyire completed a report that was consistent with Lopez's observations and respectful in tone.  (ECF No. 59-11.)  Plaintiff's report regarding the same incident demanded that management prove their allegations against her and accused management of

10

harassment.  (ECF No. 47-15.)  Because there is no evidence that Kekyire had the same supervisor as Plaintiff or that he engaged in conduct that was of similar seriousness to Plaintiff's transgressions, the Court finds that Kekyire was not similarly situated to Plaintiff.

Plaintiff makes no attempt to produce any other evidence that would give rise to an inference that the motivation for her termination was discriminatory.[2]  Plaintiff's employment was at-will and the law only protects employment decisions that are made for a discriminatory purpose.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (Title VII is not a "generally civility code").  Employers are permitted to terminate their employees for any reason—or no reason at all—so long as the motivation for such action is not discriminatory.  *Perry v. Woodward*, 199 F.3d 1126, 1133 (10th Cir. 1999).

Plaintiff bears the burden of producing evidence sufficient to satisfy each prong of the *prima facie* standard.  *Sanders v. Southwestern Bell Telephone, L.P.*, 544 F.3d 1101, 1105 (10th Cir. 2008).  Because Plaintiff has failed to point to evidence in the record that would give rise to an inference that her termination was motivated by discrimination, the Court finds that summary judgment is appropriate on her Title VII race, national origin, and sex discrimination claims.

---

[2]    The Court notes that there are other means of showing that a termination occurred under circumstances that give rise to an inference of discrimination.  *See Hystem v. Burlington Northern v. Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (courts must be sensitive to "myriad" of ways in which an inference of discrimination can arise); *see also Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (listing methods of showing an inference of discrimination).  Plaintiff does not argue that any of these other methods applies here.

Moreover, the *prima facie* standard for a discrimination claim under CADA is the same as Title VII. *Lawley v. Dep't of Higher Educ.*, 36 P.3d 1239, 1247 (Colo. 2001). As discussed above, Plaintiff has failed to meet her *prima facie* burden with respect to her Title VII claims. For the same reasons, the Court finds that Plaintiff has failed to meet her *prima facie* burden with respect to her CADA discrimination claims. Therefore, summary judgment on Plaintiff's discrimination claims pursuant to CADA is also granted.

**B.    Retaliation**

To establish a *prima facie* case of retaliation, Plaintiff must make a showing that: (i) she was engaged in protected activity; (ii) she suffered an adverse employment action; and (iii) there was a causal connection between the protected activity and the adverse action. *Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1210 (10th Cir. 2011). It is undisputed that Plaintiff engaged in a protected activity when she submitted a letter to Defendant complaining that she was the victim of discrimination. (ECF No. 47-18.) Plaintiff's termination was undoubtedly an adverse employment action. Thus, the only issue remaining in Plaintiff's *prima facie* case is whether she has produced evidence showing a causal link between her termination and her complaint of discrimination.

Plaintiff contends that the timing her complaint relative to her termination meets her *prima facie* burden. A close temporal proximity between the protected activity and the adverse action alone may establish a causal link. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001); *Anderson v. Coors Brewing Co.*, 181 F.3d

1171, 1179 (10th Cir. 1999).  Plaintiff submitted her Report of Discrimination to her supervisor approximately thirty minutes before she was terminated.  (Pl.'s Decl. ¶ 10.)  However, "the proximity between a specific . . . activity and the alleged retaliatory act is meaningless unless those who caused the alleged retaliatory act to occur are shown to have been aware of the specific activity." *Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1184 (10th Cir. 2002); *see also Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ( "[A plaintiff] must first come forward with evidence from which a reasonable fact-finder could conclude that those who decided to fire him had knowledge of his protected activity."); *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005) (coupling "close temporal proximity" with "[a]n employer's knowledge of the protected speech").  Thus, Plaintiff must show that Costigan, the individual who made the decision to terminate her, had knowledge of her Discrimination Report at the time she was terminated.

Plaintiff argues "it is a certainty that Campbell spoke with Costigan as he held plaintiff's note in his hand."  (Opp. at 16-17.)  Plaintiff also argues "[w]hat actually happened—and a jury would easily so find—is that Campbell read plaintiff's note, the Internal Report of Discrimination, to Costigan on the telephone and Costigan decided to call plaintiff in to fire her for bogus reasons that had arisen the month before."  (*Id*. at 17.)  In support of these arguments, Plaintiff points to her Declaration, which states:

> Frank [Campbell] was required by company policy to review my complaint before passing it upward in management.  He surely did so, because within thirty minutes, he came out and got me and told me that John Costigan wanted to see me right away.  I was fired in that 30-minute period.  Frank claims he put the note under HR's door.  That may be so.  However, there is no doubt he got hold of John Costigan as

soon as he read it.  This is exactly why I got fired.

(Pl.'s Decl. ¶ 10.)

The Court finds that this statement is not evidence that Costigan knew of Plaintiff's Discrimination Report when he terminated her.  "Under the personal knowledge standard, an affidavit is inadmissible if the witness could not have actually perceived or observed that which he testifies to."  *Id*.  Plaintiff does not have personal knowledge about what Frank Campbell did after she gave him her Discrimination Report.  She did not see him read the Report or speak with John Costigan.  Therefore, the Court must disregard Plaintiff's allegation that "there is no doubt" that Campbell told Costigan about the report of discrimination before Plaintiff was fired.  *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1200 (10th Cir. 2006) ("[S]tatements of mere belief in an affidavit must be disregarded.").

The actual evidence in the record shows that Plaintiff gave her Discrimination Report to Frank Campbell about thirty minutes before she was called into Costigan's office for the meeting during which she was terminated.  (Pl.'s Decl. ¶ 10.)  Campbell testified that, upon being handed Plaintiff's report, he did not read it.  (Campbell Dep. at 6.)  Rather, he placed it in an envelope and slid it under the door of the Human Resources office.  (*Id*. at 8.)  Robbi Near found the envelope on her floor the next morning and stamped Plaintiff's report as received on May 5, 2010.  (ECF No. 47-18; Near Dep. at 16.)  Near then took Plaintiff's Discrimination Report to John Costigan.  (Near Dep. at 27-28.)

Plaintiff has produced no evidence showing that Costigan knew of her report of discrimination before she was terminated.  Moreover, Plaintiff admits that no

14

one—including Plaintiff herself—mentioned her Discrimination Report during the meeting in which she was terminated.  (Pl.'s Dep. at 183.)

On this evidence, the Court finds that Plaintiff has failed to meet her *prima facie* burden of producing evidence of a causal relationship between her termination and her protected activity.  Although she was terminated shortly after she submitted her Discrimination Report, there is no evidence that the decision-maker in her termination knew about her protected activity at the time she was terminated.  Therefore, the temporal proximity alone cannot suffice to meet her *prima facie* burden.  *Hysten*, 296 F.3d at 1184.  Accordingly, the Court finds that summary judgment on Plaintiff's retaliation claim is appropriate.

Additionally, the *prima facie* standard for proving a retaliation claim under CADA is the same as Title VII.  *Molla v. Colo. Serum Co.*, 929 P.2d 1, 2-3 (Colo. App. 1996).  Because the Court has found that Plaintiff has failed to meet her *prima facie* burden with respect to her Title VII retaliation claim, the Court likewise finds that Plaintiff has failed to make a sufficient *prima facie* showing on her CADA retaliation claim.  Accordingly, summary judgment is granted as to Plaintiff's CADA retaliation claim.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment (ECF No. 47) is GRANTED.  The Clerk shall enter judgment in favor of Defendant on all claims.  Costs shall be awarded to Defendant.

Dated this 21st day of May, 2012.

BY THE COURT:

_____

William J. Martinez
United States District Judge